## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
                                  :
TIMOTHY J. MITTS,                 :
                                  :
              Petitioner,         :          Civil No. 11-6679 (RBK)
                                  :
       v.                         :
                                  :
DONNA ZICKEFOOSE,                 :          MEMORANDUM OPINION & ORDER
                                  :
              Respondent.         :
                                  :
```

This matter comes before the Court upon Petitioner's original application seeking various remedies, <u>see</u> Docket Entry No. 1, and his later-submitted application seeking "stay" of "sentence," <u>see</u> Docket Entry No. 2, and it appearing that:

1.  Petitioner's original application, executed on a Section 2241 habeas form, asserted that, on September 9, 2009, Petitioner, while standing on line to the food-service hall, had a verbal exchange with another inmate, who got on the line in front of Petitioner and accompanied his actions by racial slur.  <u>See</u> Docket Entry No. 1, at 9.  According to the original application, Petitioner was assaulted by that other inmate shortly thereafter, during the meal.  <u>See</u> <u>id.</u> Petitioner maintains that he did not respond to the assault by any physical act; he also asserts that he and his attacker were transferred to another facility a few days

later, and – during an administrative investigation – the
two gave their statements, in which his attacker confirmed
that Petitioner did not engage in any physical actions.  See
id.  Petitioner also asserts that, notwithstanding his
alleged lack of physical actions against his attacker, he
was sanctioned to loss of 27 days of good-conduct-time
("GCT") credits.  See id. at 9-10.  Petitioner maintains
that he requested help of a prison representative so the
representative would assist him during the administrative
hearing underlying his sanctions but that request was
denied; he also alleges that he requested a list of inmates
present during the meal at issue in order to call them as
witnesses, but had his request to that effect analogously
denied, and the joint effect of these two denials prevented
him from calling any witnesses in support of his position
that he did not engage in any physical actions against his
attacker.  See id.  On the basis of the foregoing,
Petitioner seeks expungement of his prison record and
restoration of his lost 27 days of GCT credits.  See id.;
see also, generally, Docket Entry No. 1.  Finally, turning
to the issue of administrative exhaustion, Petitioner assets
that he exhausted his administrative remedies, and a brief
delay in his submission of administrative appeal was a
result of a delay in prison operations associated with

Christmas holidays of 2010 over which Petitioner had no
control.  See id.

2.    In addition to these issues, Petitioner's original
application contains statements expressing his beliefs that:
(a) Petitioner's transfer from the facility where the
incident took place to another facility violated his rights;
(b) Petitioner's rights were also violated because the
prison officials were aware of the violent propensities of
Petitioner's attacker but allowed that attacker to remain
within the general prison population; and (c) Petitioner is
entitled to damages on the basis of his allegedly improper
sanctions, transfer and being a victim of the attack.  See
id.

3.    Petitioner's later-received submission indicates
Petitioner's concern that, due to his loss of 27 days of GCT
credits, his consideration for placement to a community
correctional center ("CCC") under the Second Chance Act
might be delayed.  See Docket Entry No. 2.  Correspondingly,
qualifying the imposition of the sanction as "sentence,"
Petitioner seeks this Court's order directing "stay" of this
"sentence," seemingly in order to ensure his consideration
for CCC placement on the-sooner-the-better basis.  See id.

4.    Since Petitioner's original and later-received submissions
indicate his substantial confusion as to the scope of habeas

review and remedy, the Court finds it warranted to address the panoply of claims raised by Petitioner's two applications <u>seriatim</u>.

5.   Federal law provides two avenues of relief to prisoners: a petition for habeas corpus and a civil rights complaint. <u>See</u> <u>Muhammad v. Close</u>, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [while] requests for relief turning on circumstances of confinement [fall within the realm of] a § 1983 action."[1]  <u>Id.</u>  As § 1983 action applies only to state actions, it is not available to federal prisoners; the federal counterpart is an action under <u>Bivens</u> alleging deprivation of a constitutional right.  <u>See</u> <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 801 (3d Cir. 2001) ("A <u>Bivens</u> action . . . is the federal equivalent of the § 1983 cause

---

[1] In a series of cases beginning with <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973), the Supreme Court analyzed the intersection of civil rights and habeas corpus.  In <u>Preiser</u>, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate or speedier release.  <u>See</u> <u>id.</u> at 476. The prisoners did not seek compensatory damages for the loss of their credits.  <u>See</u> <u>id.</u> at 494.  Assessing the prisoners' challenge, the Supreme Court held that a prisoner must bring a suit for equitable relief that, effectively, challenges "the fact or duration of confinement" as a habeas corpus petition.  <u>Id.</u> at 500.

of action against state actors, [it] will lie where the
defendant has violated the plaintiff's rights under color of
federal law"). The Court of Appeals for the Third Circuit
explained the distinction between the availability of civil
rights relief and the availability of habeas relief as
follows:

> [W]henever the challenge ultimately attacks the
> "core of habeas" - the validity of the continued
> conviction or the fact or length of the sentence -
> a challenge, however denominated and regardless of
> the relief sought, must be brought by way of a
> habeas corpus petition. Conversely, when the
> challenge is to a condition of confinement such
> that a finding in plaintiff's favor would not
> alter his sentence or undo his conviction, an
> action under § 1983 is appropriate.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).
Therefore, a prisoner is entitled to a writ of habeas corpus
only to the degree he "seek[s] to invalidate the duration of
[his] confinement - either directly through an injunction
compelling speedier release or indirectly through a judicial
determination that necessarily implies the unlawfulness of
the [government's] custody." See Wilkinson v. Dotson, 544
U.S. 74, 81 (2005). In contrast, if a judgment in the
prisoner's favor would not affect the fact or duration of
the prisoner's incarceration, habeas relief is unavailable
and a civil complaint is the appropriate form of remedy.[2]

---

[2] Unlike habeas actions, civil rights cases require a filing
fee, either as a prepayment or a series of installment payments.

See, e.g., Ganim v. Federal Bureau of Prisons, 235 Fed. App'x 882 (3rd Cir. 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 Fed. App'x 551, 553-54 (3rd Cir. 2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed habeas petition without prejudice to any right to assert claims in properly filed civil rights complaint). For instance, the Court of Appeals emphasized that, where an inmate files an application

> alleging that [the Parole Board officials]
> violated his due process rights . . . at his
> parole eligibility hearings by relying on the

---

See 28 U.S.C. § 1915. The filing fee for a habeas petition is $ 5.00, and inmates filing a habeas petition who are granted in forma pauperis status do not have to pay the filing fee. See Santana v. United States, 98 F. 3d 752 (3d Cir. 1996) (filing fee payment requirements of PLRA do not apply to in forma pauperis habeas corpus petitions and appeals). In contrast, the filing fee of a civil rights complaint is $ 350.00. Inmates filing a civil rights complaint who proceed in forma pauperis are required to pay the entire filing fee in monthly installments which are deducted from the prison account. See 28 U.S.C. § 1915(b). In addition, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants, then the prisoner may not bring another action in forma pauperis unless he or she is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g). Because of these differences, the court neither sua sponte re-characterize a habeas pleading into a civil rights complaint nor do they sua sponte create civil actions for habeas litigants.

> fabricated evidence in denying his parole, [the
> application does not present a "core" habeas
> challenge because] the Parole Review Board still
> could have denied him parole at his review hearing
> [relying on non-falsified evidence, since] the
> Parole Review Board bases its decision to grant or
> deny parole on numerous factors . . . .

Fain v. Morgan, 255 Fed. App'x 644 (3d Cir. 2007).

Accordingly, the Fain court concluded that the inmate's
application should be a civil rights complaint rather than a
petition stating a habeas challenge.[3]  See id.

6.   Therefore, to the degree Petitioner wishes to challenge such
     matters as his alleged transfer from one federal facility to
     another or the alleged failure of the prison officials to
     protect Petitioner from being assaulted by his attacker, who
     was -- allegedly -- a known violent inmate, such challenges
     cannot be entertained in the instant habeas action, since
     any resolution of these claims would have no impact on
     Petitioner's term of confinement.  Analogously, Petitioner's
     claims for damages cannot be raised in a habeas action,
     since the nature of habeas relief is necessarily injunctive.
     Consequently, the Court will dismiss these lines of
     Petitioner's claims for lack of habeas jurisdiction; such

---

[3] Notably, the Court of Appeals reached this conclusion,
even though the inmate's original application in Fain sought no
curative hearing and contained numerous allegations that the
parole board denied the inmate "required release."  See Fain v.
Morgan, Civil Action No. 06-4404 (JAP) (D.N.J.), Docket Entry No.
1, at 5-8, 10.

dismissal will be without prejudice to Petitioner's raising these challenges by means of a civil complaint.  The Court, however, stresses that no statement made in this Memorandum Opinion & Order shall be construed as expressing this Court's opinion as to procedural or substantive validity or invalidity of such claims in the event these claims are raised by means of a civil complaint.

7.    In conjunction with the foregoing, the Court finds it warranted to take notice of two aspects of Petitioner's habeas challenges, namely, his request for an order directing Respondent to restore the 27 days of lost GCT credits to Petitioner, and his concern that his evaluation for transfer to a CCC (and, correspondingly, his actual transfer to a CCC) might be delayed in the event Petitioner is evaluated while having the sanctions underlying the current action on his prison record.

8.        However, and contrary to what appears to be
          Petitioner's perception, even if a federal court
          determines that an inmate's due process rights
          were violated during an administrative hearing,
          the federal court does not conduct its own "trial"
          superceding a defective administrative proceeding:
          in such case, the proper remedy is a curative
          administrative hearing conducted in accordance
          with due process requirements (only if the
          administrative body expressly fails to comply
          with a judicial order directing new and
          procedurally correct hearing, such failure gives
          basis to the court's further intervention, e.g.,
          by means of holding an in-court hearing or
          directing the administrative body to correct the
          prison term of the affected inmate).  See, e.g.,

Mickens-Thomas v. Vaughn, 355 F.3d 294 (3d Cir. 2004); Toolasprashad v. Grondolsky, 570 F. Supp. 2d 610, 631 (D.N.J. 2008) ("The only remedy the court can give is to order the [administrative body] to correct the abuses or wrongful conduct within a fixed period of time") (quoting Billiterri v. United States Board of Parole, 541 F.2d 938, 943-44 (2d Cir. 1976), and citing Furnari v. United States Parole Comm'n, 531 F.3d 241 (3d Cir. 2008)); cf. Wilkinson v. Dotson, 544 U.S. 74 (2005) (pointing out that a procedurally proper curative administrative proceeding might yield a substantive determination identical to that reached as a result of a procedurally defective administrative proceeding); Howard v. United States Bureau of Prisons, 487 F.3d 808 (10th Cir. 2007) (remanding the case for further proceedings envisioning, inter alia, a curative administrative hearing).

Cannon v. Schultz, 2010 U.S. Dist. LEXIS 59468, at *16-17 (D.N.J. June 16, 2010).  Therefore, to the degree Petitioner seeks to challenge his loss of GCT credits, the habeas remedy Petitioner would be entitled to, in the event he prevails in the instant action, would be an order directing a curative administrative hearing complying with the relevant constitutional safeguards, rather than an order outright directing restoration of Petitioner's lost GCT credits (that is, unless Petitioner's prison officials fail to comply with the order directing them to hold a curative hearing).

9.   To the extent Petitioner seeks a "stay" of "sentence," which appears to be an application for a temporary injunctive relief in the form of an order directing his current prison

officials to evaluate him for CCC placement without factoring in his lost GCT credits (_i.e._, to evaluate him with a presumption that Petitioner's loss of GCT credits would necessarily be revoked as a result of these proceedings), Petitioner's position is neither supported by the letter and spirit of the Second Chance Act nor by the gist of habeas law which prohibits adjudication of speculative claims.  The process of assignments to a CCC is governed by 18 U.S.C. § 3624(c)(1), that is, the statute which was amended in 2007 by Pub. L. No. 110-199 (the Second Chance Act), effective April 9, 2008.  In essence, the Second Chance Act extended the maximum amount of time that the Federal Bureau of Prisons ("BOP") may place an inmate in a CCC from 180 days to twelve months.  The statute provides, in pertinent part:

> (1)  In General. - The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

. . .

(4)  No limitations. - Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

. . .

(6)   Issuance of regulations.  The Director of the
      Bureau of Prisons shall issue regulations pursuant
      to this subsection not later than 90 days after
      the date of the enactment of the Second Chance Act
      of 2007, which shall ensure that placement in a
      community correctional facility by the Bureau of
      Prisons is -

      (A)   conducted in a manner consistent with section
            3621(b) of this title;

      (B)   determined on an individual basis; and

      (C)   of sufficient duration to provide the
            greatest likelihood of successful
            reintegration into the community.

18 U.S.C. § 3624(c).  Thus, Petitioner does not have a

liberty interest in a vested right to reduction of his

sentence by means of his placement in a CCC: the decision is

statutorily reserved to be subject to the BOP's discretion.

Cf. Magnin v. Beeler, 110 F. Supp. 2d 338, 340 n.2 (D.N.J.

2000).  Rather, the statutory or ensuing regulatory

enactments merely created an entitlement protected by the

Due Process Clause, i.e., these provisions merely protect

Petitioner's expectation to be evaluated for such placement.

Cf. Greenholtz v. Inmates of Nebraska Penal & Correctional

Complex, 442 U.S. 1, 7 (1979) (addressing the right to

parole consideration); see also Board of Pardons v. Allen,

482 U.S. 369 (1987); Prevard v. Fauver, 47 F. Supp. 2d 539,

545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).

Correspondingly, Petitioner has no vested right in either

being evaluated for CCC placement on a certain date or in
being placed in a CCC on a certain date: rather, he has a
right to be evaluated, generally, and to be placed in a CCC
if the BOP concludes, upon due evaluation, that Petitioner
shall be so placed.  Here, Petitioner does not assert that
he was either unduly denied evaluation or that he received
an undue denial of CCC placement; rather he wishes to be
evaluated not on his current record but with a presumption
that his lost GCT might eventually be restored.  However, no
language in the Second Chance Act mandates or even allows
the BOP to evaluate an inmate for a CCC placement on the
basis of a sheer hypothetical.  Analogously, this Court is
not in a position to adjudicate a sheer hypothetical:
indeed, at the current juncture, it is plausible that this
litigation would establish no violation of Petitioner's
rights, as it is possible (even if the Court finds in favor
of Petitioner and orders a curative administrative hearing
in compliance with the relevant constitutional safeguards)
that such curative hearing would result in a finding that
Petitioner was properly sanctioned to 27 days lass of GCT
credits.  Accord Fain v. Morgan, 255 Fed. App'x 644; cf.
Toolasprashad v. Grondolsky, 570 F. Supp. 2d at 635
(challenge to a future parole eligibility hearing is too
speculative to warrant habeas relief); see also Allegheny

Energy Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)
(In determining whether to grant a temporary restraining
order, a Court must consider: (a) the movant's likelihood of
success on the merits; (b) the probability of irreparable
harm to the moving party if immediate relief is not granted;
(c) the potential harm to the non-moving party; and where
applicable; and (d) the public interest.  Here, Petitioner's
likelihood of success on the merits is questionable, and it
does not appear that he stands to suffer irreparable harm in
the event he is evaluated for a CCC placement 27 days later,
i.e., on the basis of his current release date).  Therefore,
Petitioner's application for "stay" of "sentence" will be
construed as his motion seeking temporary injunctive relief,
and such motion will be denied, as not meriting relief at
the instant juncture.

10.  The foregoing analysis leaves this Court with two lines of
Petitioner's claims, one being Petitioner's request for
expungement and another being his procedural and substantive
challenges to the sanctions imposed and to the
administrative proceeding that produced said sanctions.

11.  With regard to Petitioner's request for expungement, it
shall be noted that the Court of Appeals stressed its doubts
as to whether an expungement claim could, altogether, be
raised in a habeas action.  See Williams v. Fed. Bureau of

Prisons, 85 Fed. App'x 299 (3rd Cir. 2004).  In Williams,
the inmate filed a § 2241 habeas petition claiming that the
BOP improperly refused to delete information contained in
his prison file.  See id. at 303.  In response, the Court of
Appeals observed:

> We have never had to decide whether to endorse the
> right of expungement announced in Paine v. Baker,
> 595 F.2d 197 (4th Cir. 1979), and other Circuit
> Courts of Appeals have expressly questioned its
> precedential value.  [See] Johnson v. Rodriguez,
> 110 F.3d 299, 308-09 n. 13 (5th Cir. 1997).
> Nevertheless, [the inmate in Williams] argues that
> his . . . prison file expungement claim are
> meritorious under Paine v. Baker.  There, the
> Court of Appeals for the Fourth Circuit announced
> that, in limited circumstances, state prisoners
> have a federal due process right to have
> "prejudicial erroneous information expunged from
> their prison files."  [Paine,] 595 F.2d at 202.
> The court held:
>
>> In certain limited circumstances a claim
>> of constitutional magnitude is raised
>> where a prisoner alleges (1) that
>> information is in his file, (2) that the
>> information is false, and (3) that it is
>> relied upon to a constitutionally
>> significant degree.
>
> Id. at 201.  [The inmate now] argues that he can
> assert Paine v. Baker expungement claims in a §
> 2241 habeas petition.  Even if we assume arguendo
> that [the inmate] can assert a Paine v. Baker
> expungement claim in a § 2241 habeas petition, it
> is nevertheless clear that he is not entitled to
> relief [of expungement of] his prison file [where
> the information on file is factually correct].

Williams, 85 Fed. App'x at 303 (emphasis supplied).[4]

---

[4] Williams was decided before the Supreme Court's ruling in
Wilkinson v. Dotson, 544 U.S. 74, the rationale of which seems to

In light of the "_arguendo_" language used by the Court of Appeals in _Williams_ and the clarifications provided, later on, by the Supreme Court in _Wilkinson_, Petitioner's expungement claim appears not cognizable in a habeas action. However, if it were to be presumed cognizable, this claim might merit relief, provided that Petitioner succeeds at establishing that he was sanctioned for committing no infraction whatsoever.  Therefore, while noting its grave doubts as to propriety of Petitioner's litigation of his expungement claim in the instant habeas matter, the Court concludes, out of abundance of caution, that an outright dismissal of this claim on jurisdictional grounds would be premature.  Therefore, the Court will reserve this issue, and will revisit it only if Petitioner succeeds at establishing that no sanctions (or lesser sanctions) should have been imposed upon him.

12.  Finally, the Court turns to Petitioner's challenges to the administrative proceeding that produced the sanctions at issue.  Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  _See_ _Wolff v. McDonnell_, 418 U.S. 539, 556 (1974);

outright bar all § 2241 challenges seeking expungement.

Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v.
Swenson, 404 U.S. 249 (1971).  Such protections are,
however, "subject to restrictions imposed by the nature of
the regime to which [prisoners] have been lawfully
committed. . . .   In sum, there must be mutual
accommodation between institutional needs and objectives and
the provisions of the Constitution that are of general
application."  Wolff, 418 U.S. at 556.  A liberty interest
protected by the Due Process Clause may arise from either of
two sources: the Due Process Clause itself or from state or
federal law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983);
Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d
Cir. 1999).  Where the government has created a right to
good time credits, and has recognized that a prisoner's
misconduct authorizes deprivation of the right to good time
credits as a sanction,[5] "the prisoner's interest has real
substance and is sufficiently embraced within Fourteenth
Amendment 'liberty' to entitle him to those minimum
procedures appropriate under the circumstances and required
by the Due Process Clause to insure that the state-created

---

[5]  The Constitution itself does not guarantee good time
credits for satisfactory behavior in prison.  Congress, however,
has provided that federal prisoners serving a term of
imprisonment for more than one year, other than a term of
imprisonment for the duration of the prisoner's life, may receive
credit toward the service of their sentence based upon their
conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

right is not arbitrarily abrogated." <u>Wolff</u>, 418 U.S. at 557.  Thus, a prisoner is entitled to an impartial disciplinary tribunal, <u>see</u> <u>Wolff</u>, 418 U.S. at 570-71; and prison officials must also provide a prisoner facing disciplinary sanctions with: (a) a written notice of the charges at least 24 hours prior to any hearing, (b) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (c) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action.  <u>See</u> <u>id.</u>, 418 U.S. at 564-66.  This trio of requirements can, in a way, be perceived as the procedural arm of due process, as it applies to administrative hearings conducted by prison officials.  In addition, there is another requirement which, in a way, could be perceived as the substantive arm of the same due process consideration: pursuant to this other requirement, the findings of a prison disciplinary official rendering a sanction upon the inmate must be supported by "some evidence" in the record.  <u>See</u> <u>Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill</u>, 472 U.S. 445, 454-56 (1985); <u>Young v. Kann</u>, 926 F.2d 1396, 1402-03 (3d Cir. 1991). The Supreme Court guided:

> The fundamental fairness guaranteed by the Due
> Process Clause does not require courts to set
> aside decisions of prison administrators that have
> *some basis* in fact. Revocation of good time
> credits is not comparable to a criminal
> conviction, and neither the amount of evidence
> necessary to support such a conviction, nor any
> other standard greater than some evidence applies
> in this context.

Hill, 472 U.S. at 456 (internal citations omitted, emphasis

supplied).  Hence, the "some evidence" requirement is

violated only if a disciplinary sanction is rendered without

any factual basis or if the entire factual basis is false.

Cf. Williams v. Federal Bureau of Prisons, 85 Fed. App'x

299, 303 (3d Cir. 2004).

13. Here, Petitioner asserted a panoply of challenges to his

administrative proceeding underlying the sanctions at issue.

However, for the purposes of this Court's habeas analysis,

only three allegations appear pertinent, i.e., procedurally,

Petitioner maintains that he was unable to call witnesses in

defense of his position due to the alleged denial of his

request for information as to the inmates who were present

during the meal at issue (and that Petitioner could not

conduct a further inquiry of the same due to the joint

effect of his transfer to another facility and the alleged

denial of his request for a prison representative to assist

him in his defense).  Simultaneously, Petitioner asserts,

substantively, that he was sanctioned for committing no

infringement whatsoever, *i.e.*, for merely being the victim of his attacker.[6]  These, and only these, two narrow lines of procedural and substantive challenges present issues warranting Respondent's answer.[7]  Correspondingly, all other Petitioner's habeas challenges will be dismissed for failure to assert a violation of Petitioner's federal rights.[8]

IT IS, therefore on this   5th   day of   December  , 2011,

ORDERED that Petitioner's challenges asserting undue transfer from one facility to another, Petitioner's failure-to-protect allegations and Petitioner's claims for damages are dismissed for lack of habeas jurisdiction.  Such dismissal is without prejudice to Petitioner's raising these claims by means of a civil complaint; and it is further

ORDERED that Petitioner's claim seeking expungement of his prison record is reserved; and it is further

---

[6] Indeed, Petitioner maintains that both he and his attacker were the only inmates interviewed in connection with the sanctions, and – according to Petitioner – Petitioner's attacker verified that Petitioner committed no infringement whatsoever and was merely the victim of attacker.

[7] In the event the instant proceedings result in grant of a habeas writ to Petitioner by directing a curative administrative hearing, *and* Petitioner's sanctions are revoked as a result of such curative hearing, this Court will revisit the expungement issue in order to determine whether it should be adjudicated in the instant action.

[8] Specifically, Petitioner's challenges based on BOP regulations, Petitioner's claims that he was "charged . . . with incorrect code," etc. will be dismissed as not implicating Petitioner's habeas rights based on federal law.

ORDERED that all Petitioner's habeas challenges other than his claim seeking expungement and his allegations asserting: (a) undue denial of his requests associated with his efforts to produce witnesses, and (b) imposition of sanctions without any evidentiary basis, are dismissed with prejudice for failure to allege a violation of Petitioner's federal rights; and it is further

ORDERED that Petitioner's application seeking "stay" of "sentence," Docket Entry No. 2, is construed as Petitioner's motion seeking injunctive relief.  This motion is denied; and it is further

ORDERED that the Clerk shall serve a copy of the Petition and this Memorandum Opinion & Order upon Respondent by certified mail, return receipt requested; and it is further

ORDERED the Clerk shall forward, electronically or by regular mail, a copy of the Petition, Docket Entry No. 1, and this Memorandum Opinion & Order, to the Chief, Civil Division, United States Attorney's Office, 970 Broad Street, Room 700, Newark, New Jersey 07102; and it is further

ORDERED that, within 45 days of the date of the entry of this Memorandum Opinion & Order, Respondents shall electronically file an answer responding to the allegations that were neither reserved nor dismissed in this Memorandum Opinion & Order; and it is further

ORDERED that the answer shall state the authority for Petitioner's term of detention, as currently calculated, see 28 U.S.C. § 2243; and it is further

ORDERED that Respondent shall electronically file with the answer certified copies of the administrative record and all documents relating to Petitioner's claims that were neither reserved nor dismissed in this Memorandum Opinion & Order; and it is further

ORDERED that, within 30 days of receipt of the answer, Petitioner may, if he so desires, file and serve a reply to the answer.  In the event Petitioner's response is not received, Petitioner's right to file his reply will be deemed waived without further notice; and it is further

ORDERED that, within 7 days of Petitioner's release, be it on parole or otherwise, Respondent shall electronically file a written notice of the same with the Clerk; and it is finally

ORDERED that the Clerk shall serve this Memorandum Opinion & Order on Petitioner by certified mail, return receipt requested.


s/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**